IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELI ANDRES,** | |
| Plaintiff, | Case No. 2:23-cv-193 |
| v. | |
| **UNIVERSITY OF PITTSBURGH MEDICAL CENTER,** | JURY TRIAL DEMANDED |
| Defendant. | |

**COMPLAINT**

NOW COMES Plaintiff, Eli Andres, by and through his attorney, Prabhu Narahari, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

**I. Nature of the Action**

1. Plaintiff brings this Complaint to recover damages under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a) *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*, and The Pennsylvania Medical Marijuana Act ("MMA"), 35 Pa. Stat. Ann. § 10231.101, *et seq.* Plaintiff alleges that he was rejected from employment due to his documented disability.

**II. Jurisdiction and Venue**

2. This action arises under the ADA and PHRA. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

5. Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding his allegations under the ADA and PHRA on February 22, 2022 under charge number 533-2022-01010. *See Exhibit 1*.

6. Plaintiff was mailed Notice of Right to Sue from the ("EEOC") on November 9, 2022. This Complaint has been filed within ninety (90) days of the Plaintiffs receipt, thus making this action timely. *See Exhibit 2*.

### III. Parties

7. Plaintiff, Eli Andres ("Plaintiff"), is an adult individual with a primary residence located at 4 Roseanne Circle, Irwin, Pa 15642

8. Defendant, University of Pittsburgh Medical Center ("Defendant") is a Pennsylvania business corporation, with their headquarters located at 600 Grant Street, 58th Floor, Pittsburgh Pa 15219.

### IV. Facts

9. Plaintiff received an offer letter from Defendant for the position of Lease Analyst via email on December 21, 2021.

10. This offer letter was sent from Jessica Willard, a recruiter with the Defendant's Talen Acquisition department.

11. Plaintiff had a start date of January 18, 2022.

12. Prior to his start date, Plaintiff was requested to complete a wellness test.

13. This wellness test included a drug screening for marijuana.

14. Prior to completing this wellness test, Plaintiff submitted documentation to Defendant of his active marijuana license.

15. Plaintiff has a documented disability of anxiety and night-time sleep deprivation.

16. On January 6, 2022, Plaintiff received a call from Defendant indicating that his wellness test was positive for marijuana.

17. In response, Plaintiff cited his active medical marijuana license, and his prior submission of the relevant documentation.

18. Despite this prior submission, Plaintiff was instructed to submit further documentation which included receipts from a dispensary for his medical marijuana purchases.

19. After the call with Defendant, Plaintiff emailed Willard to inform her of his rejection from Defendant and to inquire for more details regarding the rejection.

20. Plaintiff indicated that his rejection was based solely on his possession of the medical marijuana card.

21. Plaintiff further explained his active card as well as his willingness to supply further information.

22. Willard responded to Plaintiff with very little information and redirected him to the Defendant's health department.

23. Plaintiff had not purchased from a dispensary from August 13, 2020 through January 10, 2022, so he could not supply hard copy receipts from this time frame.

24. To comply with the Defendant's request for receipts, Plaintiff supplied receipts for purchases made before August 13, 2020.

25. Plaintiff was not shopping at the dispensary in order to limit his exposure to COVID-19 and because he had an existing supply and did not need to purchase more medication.

26. To avoid further issues and move forward in the onboarding process, Plaintiff applied for an updated medical marijuana card, which was issued on January 10, 2022.

27. Over the next couple days, Plaintiff communicated with Willard and Zachary Taylor, an Onboarding Associate with Defendant's Talent Acquisition department, in order to addr3ess the rejection from the position and supply further information.

28. Willard and Taylor both redirected Plaintiff to different departments of Defendant. No one was able to explain why Plaintiff was rejected from the position after receiving the offer letter.

29. Plaintiff became aware that his rejection was based solely on his possession of a medical marijuana card.

30. Willard informed Plaintiff that he wouldn't be able to retake the wellness test nor be able to reapply for any positions with Defendant for six months.

31. Defendant failed to hire Plaintiff due to his documented disability.

32. Respondent did not grant Plaintiff's request for an accommodation.

33. Further, Defendant did not offer any other means of accommodation for Plaintiff's disability.

## COUNT I

**Failure to Accommodate in Violation of the Americans with Disabilities Act ("ADA") of 1990**

34. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

35. To prevail on a claim of failure to accommodate, one must establish that "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Tourtellotte v. Eli Lily & Co.,* 636 F.App'x 831, 849 (3d Cir. 2016) *(internal citations omitted).*

36. It is indisputable that Plaintiff made the employer aware of his disability, as he told Defendant prior to taking the required wellness test.

37. Plaintiff suffers from anxiety and night time sleep deprivation, which he sought a medical marijuana card for.

38. Plaintiff repeatedly informed Defendant of his legal medication.

39. Defendant did not provide any type of accommodation, which caused Defendant to revoke the job offer.

40. Defendant's reasoning for denying Plaintiff employment is discriminatory. There was no other non-discriminatory reasoning for not allowing Plaintiff to continue his employment.

41. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under state and federal law to be free from discrimination.

## COUNT II

**Discrimination in Violation of the Americans with Disabilities Act ("ADA") of 1990**

42. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

43. The inquiry into whether a person is disabled under the ADA is made on a case-by-case analysis. *Tice v. Centre Area Transport Authority*, 247 F.3d 506 (3rd Cir. 2001). To establish a prima facie case of discrimination under the ADA, Plaintiff must show: (1) he is a disabled person within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job; and (3) he suffered an adverse employment decision as a result of discrimination. *See McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir. May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

44. Plaintiff is a person who qualifies as disabled under the ADA.

45. Plaintiff informed Defendant on several occasions of his disability and legal prescription used to treat his disability.

46. However, upon the results of the wellness test, Defendant revoked Plaintiff's job offer.

47. Plaintiff was a qualified individual for this position with Defendant.

48. There is no evidence that he was unqualified for the position.

49. Defendant's reasoning for denying Plaintiff employment is discriminatory. There was no other non-discriminatory reasoning for not allowing Plaintiff to continue his employment.

50. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under state and federal law to be free from discrimination.

## COUNT III

### Disability Discrimination in Violation of the Pennsylvania Human Relations Act ("PHRA")

51. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

52. The PHRA is modeled similarly to the ADA and shares similar burdens. The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. Bialko v. Quaker Oats Co., 434 F. App'x. 139, 142 n.5 (3rd Cir. 2011) (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim.").

53. As previously stated, in violation of the ADA, Defendant hereby violated the PHRA.

54. Plaintiff was disabled in that he suffered from anxiety and night time sleep deprivation.

55. Plaintiff was qualified to for the position.

56. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under state and federal law to be free from discrimination.

## COUNT IV

**Failure to Accommodate in Violation of the PHRA**

57. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

58.     The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. <u>Bialko v. Quaker Oats Co.</u>, 434 F. App'x. 139, 142 n.5 (3d Cir. 2011) (citing <u>Rinehimer v. Cemcolift, Inc.</u>, 292 F.3d 375, 382 (3d Cir. 2002).

59.     Here, Plaintiff was disabled by his diagnosed anxiety and night time sleep deprivation.

60.     He as otherwise qualified for this position with Defendant with the use of medical marijuana before bed.

61.     Defendant decided to reject Plaintiff's prescription as a reason for having a positive drug screening.

62.     As a result, Defendant failed to accommodate Plaintiff's disability in violation of the PHRA.

63.     The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under state and federal law to be free from discrimination.

**COUNT V**

**Violation of the Pennsylvania Medical Marijuana Act, Pa. Stat. Ann. tit. 35, § 10231.101, *et seq.***

64. All preceding paragraphs are incorporated by reference as if fully set forth herein.

65. The Pennsylvania General Assembly enacted the Medical Marijuana Act based upon the policy that "Scientific evidence suggests that medical marijuana is one potential therapy that

may mitigate suffering in some patients and also enhance quality of life." Pa. Stat. Ann. tit. 35, § 10231.102.

66. Pursuant to the Medical Marijuana Act, medical marijuana may only be lawfully dispensed to: "(i) a patient who receives a certification from a practitioner and is in possession of a valid identification card issued by the department." Pa. Stat. Ann. tit. 35, § 10231. 303.

67. The Medical Marijuana Act has defined a "Patient" as an individual who "(1) has a serious medical condition; (2) has met the requirements for certification under this act; and (3) is a resident of this Commonwealth." Pa. Stat. Ann. tit. 35, § 10231.103.

68. The Medical Marijuana Act has defined a "Serious medical condition" as "(16) Severe chronic or intractable pain of neuropathic origin or severe chronic or intractable pain in which conventional therapeutic intervention and opiate therapy is contraindicated or ineffective." Pa. Stat. Ann. tit. 35, § 10231.103

69. Plaintiff is a patient under the act because (1) he is an individual who has a serious medical condition because he suffers from anxiety; (2) he has met the requirements under this act and has received a certification from a practitioner and is in possession of a valid identification card issued by the department; (3) he is a resident of the Commonwealth of Pennsylvania.

70. The Medical Marijuana Act prescribes that "(1) No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee regarding an employee's compensation, terms, conditions, location or privileges solely on the basis of such employee's status as an individual who is certified to use medical marijuana." Pa. Stat. Ann. tit. 35, § 10231.2103

71. Plaintiff informed Defendants of his lawful medical marijuana use prior to the drug test.

72. Defendants revoked Plaintiff's job offer after he failed the drug test due to using medical marijuana and cited his failed test as the reason for denial.

73. Therefore, Plaintiff believes and avers that Defendants unlawfully refused to hire Plaintiff on the basis of Plaintiff's status as an individual who is legally certified to use medical marijuana in violation of the PA Medical Marijuana Act.

WHEREFORE, Plaintiff respectfully request that this Court enter judgement in his favor and against the Defendants, and award all damages available at law and in equity, including; lost wages, compensatory damages, punitive damages, court costs, attorney fees, pre-judgment and continuing interest, and any other relief that the Court deems necessary and proper.

**COUNT VI:**
**Wrongful Termination in Violation of Public Policy**

74. The averments contained in the preceding paragraphs are incorporated as though set forth at length herein.

75. Under Pennsylvania Common Law, an employer may not discharge an at-will employee if the discharge would "threaten a clear public policy." Davenport v. Reed, 785 A.2d 1058, 1063 (Pa. Cmmw. 2001).

76. Under this "Public Policy exception", an employer "cannot discharge an employee when [specifically] prohibited from doing so by statute." Mikhail v. Pennsylvania Org. for Women in Early Recovery, 63 A.3d 313, 317 (Pa. Super. 2013) (quoting Donahue v. Federal Exp. Corp., 753 A.2d 238, 244 (Pa. Super. 2000).

77. To reiterate, per the Pennsylvania Medical Marijuana Act, it is the State's Public Policy that; "(1) No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee regarding an employee's compensation, terms, conditions,

location or privileges solely on the basis of such employee's status as an individual who is certified to use medical marijuana." Pa. Stat. Ann. tit. 35, § 10231.2103.

78. Plaintiff is a patient under the act because (1) he is an individual who has a serious medical condition because he suffers from anxiety; (2) he has met the requirements under this act and has received a certification from a practitioner and is in possession of a valid identification card issued by the department; (3) he is a resident of the Commonwealth of Pennsylvania.

79. Plaintiff informed the Defendants of his lawful medical marijuana use prior to the drug test.

80. Defendants revoked Plaintiff's job offer after he failed the drug test due to using prescribed medical marijuana and cited his failed test as the sole reason for denial.

81. Therefore, Plaintiff believes and avers that Defendants unlawfully refused to hire Plaintiff on the basis of Plaintiff's status as an individual who is legally certified to use medical marijuana.

82. Defendants' actions in terminating Plaintiff due to his lawful use of medical marijuana is in violation of both the Pennsylvania Medical Marijuana Act and, as an extension, the Pennsylvania Public Policy exception under Pennsylvania Common Law.

83. Plaintiff suffered damages directly and proximately caused by Defendants' actions.

   WHEREFORE, Plaintiff respectfully request that this Court enter judgement in his favor and against the Defendants, and award all damages available at law and in equity, including; lost wages, compensatory damages, punitive damages, court costs, attorney fees, pre-judgment and continuing interest, and any other relief that the Court deems necessary and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor, and against Defendant, and award all damages available at law and equity, including:

a)      Lost back pay resulting from Defendant's termination of Plaintiff;

b)      Lost front pay continuing into the future for Defendant's unlawful conduct;

c)      Compensatory damages, including emotional damages and humiliation;

d)      Punitive damages to punish Defendant's conduct and to deter similar future conduct;

e)      Costs for bringing this action;

f)      Attorney's fees;

g)      Pre-judgment and continuing interest; and

h)      Any other relief that this Court deem necessary and proper

Respectfully Submitted,
/s/ Prabhu Narahari
Prabhu Narahari, Esq.
PA ID: 323895
**Manes & Narahari LLC**
One Oxford Centre
301 Grant Street, Suite 270
Pittsburgh, PA 15219
(412) 626-5588 Direct
(412) 650-4845 Fax
pn@manesnarahari.com

## VERIFICATION

I, Eli Andres, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

_E A_
Eli Andres